# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

RAY ANTHONY FUQUA, )
)
    Plaintiff )
)
vs. ) Case No. 5:18-cv-00334-HNJ
)
V.A. HOSPITAL, BIRMINGHAM, AL, )
)
    Defendant )

## MEMORANDUM OPINION

    This medical malpractice action, filed pursuant to the Federal Tort Claims Act, proceeds before the court on Defendant's Motion to Dismiss. (Doc. 10). The court notified the parties it will treat Defendant's motion to dismiss as a motion for summary judgment and allowed the parties an opportunity to submit any additional evidence they deemed pertinent to Defendant's motion. Plaintiff Ray Anthony Fuqua, proceeding pro se, asserts the need to conduct limited discovery before filing any further response to Defendant's motion. Nevertheless, Fuqua responded that he timely filed this action due to a reconsideration request he lodged with the Defendant, which, if construed in his favor, tolled the time for filing this action. (Doc. 23).

    Based upon review of the applicable precedent, authorities, and facts underlying this dispute, Fuqua prevails in his contention he timely filed this action due to the

reconsideration request he ostensibly filed with the Defendant. Therefore, the court **DENIES** Defendant's Motion to Dismiss.

## SUMMARY JUDGMENT STANDARD

When a party files a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and relies upon material outside of the pleadings in support thereof, the court may accept resort to such material, and therewith, must treat the entreaty as a summary judgment motion. Fed. R. Civ. P. 12(d).

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). Defendant, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. In addition, a movant may prevail on summary judgment by submitting evidence "*negating* [an] opponent's claim," that is, by producing materials disproving an essential element of a non-movant's claim or defense. *Id.* at 323 (emphasis in original).

A non-moving party demonstrates a genuine issue of material fact by producing evidence by which a reasonable fact-finder could return a verdict in its favor. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (citation omitted). The "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151 (citation omitted). "That is, the court should give credence to the evidence

favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* (citation omitted).

## BACKGROUND

*FTCA Claim*

Plaintiff Ray Anthony Fuqua filed a claim with the United States Department of Veterans' Affairs ("VA") regarding complications from a knee replacement surgery at the Veterans Hospital in Birmingham, Alabama. Defendant issued a notice of final denial regarding Fuqua's claim on March 9, 2017, which was mailed on March 13, 2017. (Docs. 10-1 at 2; 10-2 at 2). The notice informed Fuqua that he may file an action in court pursuing his claim "within six months after the date of mailing of [the] notice of final denial as shown by the date of [the] letter . . . ." (Doc. 10-1 at 2).

In addition, the denial notice also informed Fuqua that he may file a request for reconsideration with the VA by: "(1) mail to Office of General Counsel (021B), 810 Vermont Avenue, N.W., Washington, DC 20420; (2) fax to 202-273-6385; or (3) email to OGC.torts@mail.va.gov." (*Id.*). The VA also advised Fuqua that it must receive any reconsideration request "within six months of the date of mailing" the final denial notice as shown by the date of the letter. (*Id.*). A properly-filed reconsideration request gave the VA "six months from receipt of that request" to reconsider the claim,

4

"during which the option to file suit in an appropriate federal court . . . [was] suspended." (*Id.*).

*Veterans' Benefits Claim*

During the period the VA reviewed Fuqua's FTCA claim, it also assessed a claim for disability benefits tendered by Fuqua. On October 5, 2016, Fuqua applied for disability compensation and benefits seeking "[r]e-establishment of 100% convalescent rate of pay for left knee; right knee arthroplasty [replacement] secondary to left knee condition." (Doc. 17-1 at 7 & 8-9). On January 25, 2017, a Regional Office of the Department's Veterans Benefits Administration issued a rating decision concerning his October 5, 2016, application, assigning service-connection ratings for his left and right knee replacements. (*Id.* at 13-19). On January 30, 2017, the VBA advised Fuqua of the benefits he secured as a result of the rating decision. (*Id.* at 21-37).

*Convergence of Fuqua's FTCA and Benefits Claims*

Fuqua sent a letter dated August 28, 2017, to the VA's Alabama Regional Office asking it to "reconsider [the] decision to deny [his] claim for compensation for [his] left knee." (Doc. 14 at 2; Doc. 17-1 at 40). Fuqua also complained about the failure to obtain physical therapy for his ailment, and the limited range of motion, limp, and daily severe pain regarding the knee. (*Id.* at 40). At the end of the letter, he states the surgery "crippled" him and he "should be compensated for malpractice." (*Id.*) Fuqua attached the following documents to his August 28, 2017, correspondence: (1) a copy

of the March 9, 2017, FTCA final denial notice, and (2) a VA Form 21-0960M-9, Knee and Lower Leg Conditions Disability Benefit Questionnaire. (*Id.* at 41-53).

The VA's Alabama Regional Office received Fuqua's August 28, 2017, correspondence on September 5, 2017. (Doc. 17-1 at 40). Ostensibly, the Regional Office forwarded Fuqua's August 28, 2017, letter to a unit at the Janesville, Wisconsin, address (Doc. 17-1 at 43), and the VA treated the letter as a request for reconsideration of his disability benefits determination. (Doc. 17-1 at 4, ¶ 13; *id.* at 55). On October 27, 2017, the VBA issued Fuqua another rating decision. (Doc. 17-1 at 57-59). It noted that "a special review of your file was mandated on September 5, 2017," the date the Regional Office received his August 28, 2017, letter. (*Id.* at 57). The rating decision continued the previously-assessed ratings. (*Id.* at 58).

On October 31, 2017, the VBA sent Fuqua another notice regarding his "entitlement to VA benefits." (Doc. 17-1 at 61). While explaining its decision for continuing Fuqua at his previously-assessed ratings and benefits, the October 31, 2017, correspondence included the following statement under a section titled, "What We Decided." The notice proceeded to chronicle the "following decision(s)," which partially comprised a verbatim replication of text from the March 9, 2017, notice of final denial regarding Fuqua's FTCA claim:

> Note: If you wish to file for reconsideration of your tort claim, please refer to the letter dated March 9, 2017 from the U.S. Department of Veterans Affairs. In the letter it states:

6

The FTCA provides a legal remedy enabling an individual to recover damages under circumstances where the United States, if it were a private person, would be liable; Our review did not find any negligent or wrongful act or omission on the part of a Department of Veterans Affairs. (VA) employee acting within the scope of his or her employment whose actions or inactions caused injury to you related to medical treatment during the period from approximately November 2014 to the present.

A request for reconsideration of this claim by this office may be, filed by: (1) mail to Office of General Counsel (021B), 810 Vermont Avenue, N.W., Washington, DC 20420; (2) fax to 202- 273-6385; or (3) email to OGC.torts@mail.va.gov. VA must receive such a request within six months of the date of mailing of this notice of final denial as shown by the date of this letter. If a request for reconsideration is made, VA shall have six months from receipt of that request during which the option to file suit in an appropriate federal court under 28 U.S.C. 2675(a) is suspended.

Following the request for reconsideration, or in lieu of a request for reconsideration, further action on this matter may be instituted in accordance with the FTCA, sections 1346(b) and 2671- 2680, title 28, United States Code (U.S.C.), which provides that a tort claim that is administratively denied. may be presented to a federal district court for judicial consideration. Such a suit must be initiated within six months after the date of mailing of this notice of final denial as shown by the date of this letter (section 2401(b), title 28, U.S.C.).

(Doc. 17-1 at 61-62).

Thereafter, Fuqua filed this pro se, FTCA action on March 1, 2018.

## ANALYSIS

The Defendant contends the foregoing facts reveal Fuqua did not timely file his FTCA claim with the court. However, as portrayed, Fuqua requested a

7

reconsideration of the VA's denial of his tort claim, and the legal principles governing such requests merit a finding in Fuqua's favor on the timeliness issue.

The FTCA fashions an exception to the United States's sovereign immunity against legal redress for damage claims. *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1236 (11th Cir. 2002) (quoting *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994)). The United States may "condition a waiver of its immunity as broadly or narrowly as it wishes, and according to whatever terms it chooses to impose." *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015) (citation omitted). A court must strictly observe the "limitations and conditions upon which the Government consents to be sued." *Soriano v. United States*, 352 U.S. 270, 276 (1957). Absent a specific waiver of sovereign immunity, the court lacks subject matter jurisdiction over the suit. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475-76 (1994).

To pursue an FTCA against the United States, a plaintiff first must present the claim to the agency that allegedly perpetrated the tortious conduct within two years of the claim's accrual. 28 U.S.C. § 2401(b); *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 843 (11th Cir. 2013). Once a plaintiff receives notice of final denial rejecting the claim, the plaintiff must file suit in court within six months "after the date of mailing, by certified mail or registered mail," of the final denial notice. 28 U.S.C. § 2401(b); *Phillips v. United States*, 260 F.3d 1316, 1317 (11th Cir. 2001). Presentment to an agency, and

final denial by the agency, represent jurisdictional prerequisites to filing suit in court. 28 U.S.C. § 2675(a).

However, a claimant may toll the six-month period for filing suit after a final denial notice by timely requesting reconsideration of an agency's determination. "Prior to the commencement of suit and prior to the expiration of the 6-month period provided in 28 U.S.C. 2401(b), a claimant . . . may file a written request with the agency for reconsideration of a final denial of a claim . . . ." 28 C.F.R. § 14.9(b). If a claimant timely files such a reconsideration request, the agency shall have six months from the request's filing date to "make a final disposition of the claim . . . ." *Id.* Importantly, a claimant's reconsideration request suspends the initial opportunity to file suit in court pursuant to 28 U.S.C. 2675(a) "until 6 months after the filing of a request for reconsideration." *Id.* Moreover, "[f]inal agency action on a request for reconsideration shall be effected" by submitting the disposition in writing to the claimant, with notification that he or she may file suit in court within six months after the notification's mailing date. 28 C.F.R. § 14.9(b); *see Kalina v. United States*, No. 8:11–CV–98–T–30TGW, 2011 WL 2938093, at *2 (M.D. Fla. July 1, 2011).

The foregoing legal precepts readily apply to the dispute in this case. Fuqua timely presented his claim to the federal agency, the VA, within two years of the claim's accrual pursuant to §§ 2675 and 2401. Pursuant to § 2675(a), the VA issued a final denial of Fuqua's claim on March 9, 2017. Within six months of the final denial's

9

mailing date, the VA, via its Alabama Regional Office, received Fuqua's August 28, 2017, correspondence on September 5, 2017. Although Fuqua's August 28, 2017, letter included an executed, form regarding disability benefits, it also included the VA's March 9, 2017, final denial notice of the FTCA claim as its first appendage. More crucially, Fuqua's August 28, 2017, correspondence asked the VA to "reconsider [the] decision to deny [his] claim for compensation for [his] left knee" and prominently remarked that he "should be compensated for malpractice." (Doc. 17-1 at 40).

Drawing all reasonable inferences in Fuqua's favor, at the very least his August 28, 2017, letter sought reconsideration of his FTCA claim's final denial by the VA. The VBA's subsequent October 31, 2017, response directing Fuqua to the dictates of the March 9, 2017, final denial notice – which inserts the verbatim instructions on requesting reconsideration -- definitively forecloses any contrary assessment.

The VA argues that Fuqua did not properly file a reconsideration request because he failed to tender any correspondence to its Office of General Counsel unit, as directed in the final denial notice and reiterated in the October 31, 2017, correspondence. However, the applicable regulation does not require Fuqua to file his reconsideration request with the General Counsel unit. Rather, 28 C.F.R. § 14.9(b) required Fuqua to file his reconsideration request with the "agency" within six months of the final denial notice. That he did, albeit with another unit of the "agency," that is, the VA's Alabama

Regional Office.[1] As Fuqua proceeds pro se in this matter, his action does not constitute a failure to follow the dictates of § 14.9(b), notwithstanding the General Counsel's directive. *C.f.*, *Glarner v. U.S., Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994) (statement by veteran proceeding pro se that he informed VA staff at medical center that "I feel that I am entitled to compensation as a result of this negligence" gave adequate notice for VA to investigate FTCA claim, notwithstanding lack of filing SF95 form).

Related regulatory provisions buttress this conclusion. Foremost, FTCA regulations obligate the VA to direct claims to appropriate agencies if they are misfiled with the entity. Title 28 C.F.R. § 14.2(b)(1) provides that "[w]hen a claim is presented to any other Federal agency, that agency shall transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer." As revealed, § 14.2(b) establishes a legal duty for agencies to direct misfiled claims to the appropriate agencies. *See Bukala v. United States*, 854 F.2d 201, 203 (7th Cir. 1988) (Section 14.2(b)(1) mandates the constructive filing of claims timely

---

[1] Title 38 C.F.R. § 14.600 delegates authority to the General Counsel and the Regional Counsel (for claims $2,500 or less) to reconsider final denials of FTCA claims, yet the regulation does not elaborate upon 28 C.F.R. § 14.9(b)'s requirement that a claimant file a reconsideration request with the "agency." That is, the General Counsel's authority to reconsider final denials does not compel a finding that claimants should file reconsideration requests with the Office of General Counsel. Indeed, that § 14.9(b) instructs claimants to file reconsideration requests with the "agency," and § 14.600 delegates reconsideration authority to the "General Counsel," indicates that the proper unit for accepting a reconsideration filing does not constitute solely the Office of General Counsel. *C.f. Carcieri v. Salazar*, 555 U.S. 379, 391 (2009) ("'we are obliged to give effect, if possible, to every word Congress used'") (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)).

presented to an incorrect agency when the entity neither transfers the claim to the proper agency nor return it to the claimant) (cited approvingly in *Motta*, 717 F.3d at 844).

Furthermore, 38 C.F.R. § 14.604 provides that an FTCA " claim . . . presented to the Department of Veterans Affairs which involves the actions of employees or officers of other agencies . . . will be forwarded to the Department of Veterans Affairs General Counsel, for appropriate action in accord with 28 CFR 14.2." This regulation specifically establishes the VA's duty to forward misdirected claims to the VA General Counsel. Surely, if § 14.604 requires VA entities to redirect to the General Counsel misfiled claims appropriate for adjudication by other agencies, the VA's Alabama Regional Office should have forwarded Fuqua's August 28, 2017, reconsideration request to the General Counsel for appropriate review within the same agency. *See Saofaigaalii v. United States*, No. 14-00455 SOM/KSC, 2016 WL 3527095, at *8 (D. Haw. June 23, 2016) ("There is a considerable body of cases in which an FTCA claim has been equitably tolled because of the VA's, or another federal agency's, failure to comply with its legal duties under 38 C.F.R. § 14.604 or 28 C.F.R. § 14.2.").

To be sure, the Regional Office's October 31, 2017, notice rehashed verbatim the instruction for Fuqua to file his reconsideration request with the General Counsel, which on first blush may satisfy the legal duty to return a misfiled claim to the claimant. However, the afore-mentioned legal duty applies with respect to misfiled claims

appropriate for disposition by other agencies. Fuqua's reconsideration request reached the correct agency. Therefore, the October 31, 2017, notice does not obviate the timeliness of Fuqua's filing of the reconsideration request on September 5, 2017, because he had filed it with the "agency." As a result, the September 5, 2017, reconsideration request suspended the time for filing suit in court until six months after the reconsideration filing, which represents March 5, 2018. *See Moya v. United States*, 35 F.3d 501, 504 (10th Cir. 1994) ("'Nowhere is there any indication that what constitutes presentment of a request for reconsideration is different from presentment of the claim itself.'") (quoting *Anderberg v. United States*, 718 F.2d 976, 977 (10th Cir. 1983)); *Stewart v. U.S. Veterans Admin.*, 722 F. Supp. 406, 408 (W.D. Tenn. 1989) ("It is clear that the term 'filed' [in 28 C.F.R. § 14.9(b) regarding reconsideration requests] encompasses the receipt of the document by the office or person with whom the document is being filed.") (citing *Bailey v. United States*, 642 F.2d 344 (9th Cir. 1981); *Steele v. United States*, 390 F. Supp. 1109, 1112 (S.D. Cal. 1975)).

However, Fuqua filed this action on March 1, 2018, four days prior to the suspension on filing in court lifted pursuant to § 14.9(b). Because Fuqua filed this action prior to expiration of the six-month suspension period, the VA argues the court should dismiss this case because expiration of the suspension period constitutes a jurisdictional prerequisite.

As an initial matter, the regulations in Title 28, Chapter 14, are not jurisdictional, as the Justice Department promulgated them pursuant to the FTCA's settlement procedures under 28 U.S.C. § 2672, not the jurisdictional presentment requirement of § 2675. *See Adams v. United States*, 615 F.2d 284, 290 (5th Cir. 1980) ("The requirements of section 2675 and of section 2672 are, therefore, independent. Presentation of a claim and its settlement are distinct processes."), *decision clarified on denial of reh'g*, 622 F.2d 197 (5th Cir. 1980). Based on this distinction elucidated in *Adams* – which is lauded as a "leading case" on this dichotomy[2] -- a considerable number of cases have held that § 14.9(b)'s reconsideration suspension is not jurisdictional, or, relatedly, that none of Chapter 14's regulations are jurisdictional.[3]

---

[2] *Romulus v. United States*, 983 F. Supp. 336, 339 (E.D.N.Y. 1997), *aff'd*, 160 F.3d 131 (2d Cir. 1998).

[3] *Charlton v. United States*, 743 F.2d 557, 560 (7th Cir. 1984) ("the Fifth Circuit expressly held that the regulations promulgated pursuant to 28 U.S.C. § 2672 . . . were not incorporated into the requirements of 28 U.S.C. § 2675. The Fifth Circuit distinguished § 2672 from § 2675 by defining § 2672 and the regulations promulgated pursuant to that section as a settlement procedure. Section 2675, on the other hand, sets a condition precedent to jurisdiction in the federal court. By looking to the differing purposes of the two sections, the Fifth Circuit concluded that § 2672 and its attendant regulations are distinct from § 2675 and not incorporated therein."); *Knapp v. United States*, 844 F.2d 376, 379 (6th Cir. 1988) ("In agreement with [the Fifth Circuit in *Adams v. United States*], this court determined . . . that the regulations contained in 28 C.F.R. §§ 14.1--14.11 'govern administrative settlement proceedings; they do not set federal jurisdictional prerequisites.' . . . A claimant who fulfills the requirements of § 2675(a) but does not comply with the regulations merely loses 'the opportunity to settle ... outside the courts'; her right to bring an action in district court is not affected.") (citations omitted); *Guillot v. Ferrell*, No. 1:16-CV-1307 AWI MJS, 2017 WL 4387317, at *3 (E.D. Cal. Oct. 3, 2017) ("Several courts that have examined the issue have concluded that the denial of an administrative claim exhausts administrative remedies, and that filing suit prior to expiration of the 6 month reconsideration period has no effect on § 2675(a)'s exhaustion requirement.") (citing *Atherton v. United States*, 193 F. Supp. 3d 2, 5 (D.D.C. 2016); *State Farm Mut. Auto. Ins. Co. v. United States*, 326 F. Supp. 2d 407, 416 (E.D.N.Y. 2004); *Bond v. United States*, 934 F. Supp. 351, 355 (C.D. Cal. 1996)); *State Farm Mut. Auto. Ins. Co. v. United States*, 326 F. Supp. 2d 407, 416 (E.D.N.Y. 2004) ("§ 14.9 should not be considered jurisdictional

However, the court is loath to continue adjudication of a claim if the VA intends to reconsider pursuant to § 14.9(b), as it perhaps intimated in its Reply. Therefore, the

---

in nature. . . . 'The evident purpose behind ... adoption of reconsideration procedures is to facilitate settlement of claims ... not to provide the Government with another opportunity to investigate the legitimacy of claims or to otherwise place a stumbling block in the path of plaintiffs.' . . . With such reasoning in mind, the court holds that the plaintiff's failure to comply with 28 C.F.R. § 14.9 does not deprive this court of jurisdiction to hear the plaintiff's claims.") (quoting *Glover v. United States*, 111 F. Supp. 2d 190, 195 (E.D.N.Y.2000)); *Bond v. United States*, 934 F. Supp. 351, 357 (C.D. Cal. 1996) ("the regulations contained in Title 28 C.F.R. § 14.1 et seq. are not jurisdictional . . . . [W]hen a claimant seeks reconsideration, § 14.9(b) may in the future act to equitably toll the statute of limitations under § 2401(b). In those cases in which a claimant has been given the option to either sue after the initial final denial or have another bite at the apple by seeking reconsideration, he or she is relying on the Government's representation that the claimant will not be barred by the statute of limitations by electing this latter option."); *Atherton v. United States*, 193 F. Supp. 3d 2, 5 (D.D.C. 2016) (Atherton's last-minute decision to request reconsideration of the denial did not preclude him from commencing an FTCA action in the interim. The regulation authorizing requests for reconsideration, after all, specifies that claimants may petition an agency 'for reconsideration of a *final denial* of a claim.' . . . At least two other courts have held that an agency's unequivocal written rejection of a claim necessarily functions as a final denial of that claim.") (quoting 28 C.F.R. § 14.9 (emphasis in original); citing *Bond, supra*; *State Farm Mut., supra*); *Pardy v. United States*, 575 F. Supp. 1078, 1079 (S.D. Ill. 1983) ("the requirements of 28 C.F.R. § 14.3(e) are not jurisdictional since the regulation was promulgated pursuant to the settlement section of the Federal Tort Claims Act, 28 U.S.C. § 2672, and not the jurisdictional section, 28 U.S.C. § 2675(a)") (citing *Graves v. United States Coast Guard*, 692 F.2d 71, 74-75 (9th Cir. 1982)); *Champagne v. United States*, 573 F. Supp. 488, 491 (E.D. La. 1983) ("The requirements of the statute and the requirements of the regulations should be distinguished. . . . Although the administrative claim submission requirement is jurisdictional and cannot be waived, the technical and procedural requirements of the regulations are not always strictly enforced. . . . [L]iteral compliance with regulation 14.3(e) is not necessary for the adequate presentation of a claim under the statute.") (citing *Apollo v. U.S.*, 451 F. Supp. 137 (Pa.1978); *Graves, supra*); *Endsley v. United States*, 818 F. Supp. 252, 253 (S.D. Ind. 1992) ("Other courts have held that the requirements of [28 C.F.R. § 14.3(e)] are not jurisdictional under the Federal Tort Claims Act (28 U.S.C. § 2675(a)); rather, the regulation was promulgated pursuant to the settlement section of the Act (28 U.S.C. § 2672)) (citing *Pardy, supra*); *see also Barnwell v. FCI Danbury*, No. 3:10-CV-01301 DJS, 2011 WL 5330215, at *4 (D. Conn. Nov. 3, 2011) (plaintiff may file FTCA claim while reconsideration pending because agency issued final denial).

court accords the Defendant ten (10) days from the entry of this order to inform the court whether it indeed intends to reconsider Fuqua's claim. If the Defendant requests an opportunity to reconsider Fuqua's claim, the court will stay this action and hold it in abeyance while the Defendant reconsiders the claim.

## CONCLUSION

For the foregoing reasons, the court **DENIES** Defendant's Motion to Dismiss.

The court **ORDERS** Defendant to inform the court within ten (10) days of entry of this Order whether it intends to reconsider Plaintiff's Federal Tort Claims Act claim at the administrative level.

**DONE** this 29th day of October, 2018.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE